Matthew T. Christensen, ISB: 7213
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Phone: (208) 384-8588
Fax: (208) 853-0117
Email: mtc@angstman.com
         chad@angstman.com

Attorney for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 18-01044-JDP |
| SAFE HAVEN HEALTH CARE, INC, | Chapter 11 |
| Debtor. | |

### MOTION FOR ENTRY OF EMERGENCY AND FINAL ORDERS AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, AND REIMBURSABLE EMPLOYEE EXPENSES, (B) PAY AND HONOR EMPLOYEE VACATION AND SICK LEAVE, (C) REMIT WITHHOLDINGS & DEDUCTIONS, AND CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFIT PROGRAMS

Safe Haven Health Care, Inc., as debtor in possession ("Debtor"), by and through its counsel of record, ANGSTMAN JOHNSON, pursuant to 11 U.S.C. §§105(a) and 363(b), submits this motion ("Motion") for entry of interim orders, authorizing the Debtor to (a) pay certain prepetition wages, salaries, and reimbursable employee expenses, and (b) pay and honor employee medical and similar benefits (Collectively the "Employee Obligations"). In support of this Motion, the Debtors respectfully represent:

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 1

## GENERAL BACKGROUND

On August 10, 2018 the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner in this Chapter 11 case. No official committee has yet been appointed by the Office of the United States Trustee.

The Debtor is a Health Care Business operating multiple health care provider operations in Southern Idaho.  The Debtor operates one psychiatric hospital located in Boise, Idaho (Safe Haven Hospital of Treasure Valley), one skilled nursing facility located in Bellevue, Idaho (Bell Mountain Village and Care Center), and assisted living facilities located in Bellevue (Safe Haven of Bellevue), and Wendell, Idaho (Magic Valley Manor) (collectively the "Facilities").  Between all the Facilities there are approximately 100 residents and/or patients.

As of the Petition Date, the Debtors has approximately 164 employees.  There are 150 hourly employees, 13 salaried employees, and 36 "PRN" or on-call employees who do not have regularly scheduled shifts and whose hours vary based on circumstances at the health care facilities.  These employees are essential to the continued operation of the Debtor's health care business operations and the majority provide patient care for residents and patients at the facilities.  Each of the affected employees are listed on the attached **Exhibit A**.

In addition to these employees, other critical professionals are required to provide clinical patient care at the facilities.  Specifically, the nature of the Debtor's healthcare operations requires psychiatric doctors, medical doctors, transcriptionists, therapists and physician assistants to be available at the Facilities for patient and resident clinical care.  For this reason, the Debtor

hires independent contractors to provide these critical services at its Facilities. Each of the affected independent contractors are listed on the attached **Exhibit B**.

For the year ending 2017, the Debtor's operating income was $20,010,819. The Debtor's net income after all operating expenses and non-operating adjustments was $996,158.93. As of the Petition Date, the Debtor's outstanding payables are approximately $5,061,631.11 and total debts are approximately $17,313,444.15

<u>**CATEGORIES OF CLAIMS**</u>

The Debtor seeks by this Motion an Order allowing it to pay certain broad categories of expenses related to employee compensation and benefits.

**a.** <u>**Employee Compensation.**</u> The Debtor employees approximately 163 employees (collectively the "Employees") including approximately 106 full-time employees (collectively, the "Full Time Employees"), 20 part-time employees (collectively, the "Part-Time Employees"), and 36 on-call employees (collectively "On-call Employee"). All Employees are either salaried or hourly. No Employees are represented by a union. In the ordinary course of business, the Debtors pay Employees, among other things, wages, salaries, expense reimbursement, director and officer compensation, and certain other forms of compensation described herein, depending on the services provided by the Employee to the Debtors. The following summarizes the various types of employee compensation offered by the Debtors (collectively, the "Employee Compensation").

i. **Salaries, Wages, and Benefits.** Employees are paid monthly in arrears. The Debtor's next scheduled payroll date was on or about August 10th, 2018 for the July pay period. The Debtor's gross payroll expense payable to Employees on or about the 10th of the month is approximately $228,155.26. As of the Petition Date, the Debtors believe approximately $358,209.30is unpaid on account of wages, salaries and other compensation earned prior to the

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 3

Petition Date ("Unpaid Wages") for the month of July and August 1, 2018 through the Petition Date. Nonetheless, some Employees may be entitled to compensation for services provided before July 1, 2018, because (a) discrepancies could exist as to amounts paid; or (b) some payrolls checks issued prior to the Petition Date may not have been presented for payment or may not have cleared the banking system as of the Petition Date. The Debtor believes that there are no Employees entitled to Unpaid Wages exceeding the priority cap of $12,850 under § 507(a)(4) of the Bankruptcy Code, and thus seek authority to pay any Unpaid Wages in the ordinary course of business and consistent with past practices.

ii.     **Employee Draws.** Employees are offered the option of electing that a percentage of their accrued wages between the 1st and 15th of the month, up to 80%, be paid out to them as a draw/advance on the 25th of each calendar month. On or about the twenty-fifth (25th) day of each calendar month, the Debtor pays these certain employees a draw or advance elected by the Employee against his or her upcoming paycheck (otherwise due by the 10th of the following calendar month) (the "Employee Draws"). Currently, 89 Employees regularly receive Employee Draws. On average, the Debtor currently mails out checks for the Employee Draws in the approximate amount of $86,500.00.

iii.     The Employee Draws are a courtesy extended to Employees to help equalize their income, but the Employees receiving them have come to rely on that alternate pay period timing. Because the Employee Draws occur near the middle of each pay period (and thus earnings period), the effect is the same as if the Debtor paid those Employees semi-monthly because the Employee Draws are roughly equivalent to, or less than, accrued but unpaid wages as of the date of the Employee Draw. All Employee Draws requested prepetition were issued by check on July 25, 2018. It is likely that Employee Draws could be pending because they have

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 4

not yet cleared the banking system. As of the Petition Date, the Debtors believe approximately $1,637 of the Employee Draws have not cleared the bank.

      iv.      **Independent Contractors.** In addition to its Employees, in the ordinary course of business, the Debtors employ several doctors, physician's assistances, transcription, therapists and related services as independent contractors (the "Independent Contractors"). The Independent Contractors are critical to the Debtor's business and provide necessary clinical care services to the Debtor's residents and patients.

      v.      On average, the Debtor incurs approximately $26,800.00 in the aggregate of monthly Independent Contractor compensation (collectively, the "Independent Contractor Obligations"). The Debtors believe unpaid prepetition amounts on account of Independent Contractor Obligations equal approximately $92,994. The Debtor is aware that two Independent Contractors are owed in excess of the $12,850 priority cap under § 507(a)(4) of the Bankruptcy Code, however, the Debtor does not seek authority to pay those amounts above the statutory cap. The Debtor seeks authority to pay Independent Contractor Obligations as indicated on **Exhibit B** in the ordinary course of business and consistent with past practices.

      vi.      **Reimbursable Expenses.** Prior to the Petition Date and in the ordinary course of their businesses, the Debtors reimbursed Employees for approved, legitimate expenses incurred on behalf of the Debtors in the scope of the Employee's employment (the "Reimbursable Expenses"). The Reimbursable Expenses include purchases made for business purposes by the Employees and for related travel to, from, and between facilities. The Debtors reimburse Reimbursable Expenses (other than those paid by the Debtor directly using company cards) to Employees after processing and approving expense reports containing receipts for all items to be reimbursed. Reimbursement is thus contingent on the Debtor's determination that

the charges are for legitimate, reimbursable business expenses.  In aggregate, the Debtors pay approximately $9,000 per month on account of Reimbursable Expenses. Although the Debtors request that Employees submit reimbursement requests promptly, not all Employees are able to do so; it is therefore difficult for the Debtors to precisely calculate the amount of Reimbursable Expenses outstanding as of the Petition Date. Based on historical practices, the Debtors estimate that, as of the Petition Date, approximately $9,000 in total pre-petition Reimbursable Expenses remain unpaid. Employees incurred Reimbursable Expenses as business expense on the Debtor's behalf and with the understanding that they would be reimbursed.  To avoid harming Employees who incurred the Reimbursable Expenses, the Debtors request authority to (a) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices and honor any prepetition obligations related thereto; (b) modify their prepetition policies relating to expense reimbursement as they deem appropriate; and (c) pay all Reimbursable Expenses either to Employees or the Corporate Credit Cards, in either cause that (i) accrued prepetition and (ii) accrue post-petition but related to the prepetition period.

vii.     **Accrued Paid Time Off.** The Debtors provide Employees a paid time-off benefit (the "PTO").  During the first calendar year of employment, Employees start to accrue PTO from their start date till they reach a cap of 240 hours of maximum allowable PTO. Employees accrue PTO at the following rates:

> **A.** During the first year of employment, PTO will accrue at a rate of 4% of hours worked (based on a 40 hour workweek; it will add up to approximately two weeks of PTO for the first year).
>
> **B.** During the second through fifth years of employment, PTO will accrue at a rate of 6% of hours worked.
>
> **C.** During the sixth through tenth years of employment, PTO will accrue at a rate of 8% of hours worked.

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 6

**D.** From the eleventh year of employment forward, PTO will accrue at a rate of 10% of hours worked.

When an Employee elects to take Sick time (due to sick or injury), or vacation time, that Employee is paid his or her regular salaried or hourly rate.  In the event that an Employee is terminated from or leaves the Debtor's employment, the Employee is only entitled to a cash payment in the amount of 1/3 of the available balance of unused PTO.  PTO is not paid at the mid-month Employee Draw.  As of the Petition Date, the Debtor estimates it owe Employees approximately $14,000 in accrued PTO.  The Debtor requests that it be authorized, but not directed, to continue to honor their PTO policies in the ordinary course of business, and to honor and pay an prepetition amounts related that policy.

**b.  Workers' Compensation**

i.      The Debtor provides workers' compensation insurance for its Employees at the statutorily required level ("Workers' Compensation Program").  As part of the Workers' Compensation Program, the Debtor purchases insurance from the State Insurance Fund for applicable claims.  The premiums for Workers' Compensation Program insurance is $17,500 due on the 15th of each month.  Failure to pay the premium will result in policy cancellation. For the claims administration process to operate in an efficient manner and to ensure that the Debtor complies with applicable state law, the Debtor must continue to assess, determine, and adjudicate claims.  Accordingly, the Debtor seeks authority to (a) continue to maintain the Workers' Compensation Program in the ordinary course of business, and (b) pay any related prepetition amounts, including, without limitation, worker's compensation claims, deductibles, premiums, and fees owed as such amounts become due in the ordinary course of the Debtor's business.

**c.  Deductions and Withholdings**

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 7
Matter: 12741-001

     **i.**      **Non-Tax Related Deductions.** During each applicable payroll period, the Debtors routinely deduct certain amounts from Employee's paychecks, including, without limitation: garnishments, child support, other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as Employees' share of health care benefits; contributions under a 401(k) Plan; legally ordered deductions; and miscellaneous deductions (collectively, the "Deductions"). The Deductions are subsequently forwarded to the appropriate third-party recipients. On average, the Deductions are approximately $4,100 per month. As of the Petition Date, the Debtors estimate that accrued Deductions equal approximately $4,100. To the extent of any unpaid Deductions at the Petition Date, the Debtors seek authority to forward such Deductions to the applicable third-party recipients. In addition, the Debtors seek authority to continue forwarding Deductions to the appropriate third-party recipients on a post-petition basis, in the ordinary course of business, and consistent with past practice. The Deductions represent earnings that judicial authorities or Employees have designated for deduction from Employee's paychecks and thus, may not be property of the Debtor's estate. The failure to transfer the Deductions, such as an Employees' share of health care benefits could result in severe hardship to Employees. And, if the Debtor does not remit the judicially ordered Deductions, such as child support, Employees may face legal action.

     **ii.**      **Payroll Taxes.** The Debtor is required by law to withhold from Employee's paychecks amounts related to U.S. federal, state, local and foreign income taxes, as well as Social Security and Medicare taxes, in all cases, for remittance to the appropriate taxing authority (collectively, the "Withheld Amounts"). In addition, the Debtor is required by applicable statutory authority to pay from its own funds Social Security and Medicare taxes, and based on a percentage of gross payroll, additional amounts for federal and state unemployment

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 8

insurance (the "Employer Payroll Taxes", and together with the Withheld Amounts, the "Payroll Taxes").  On average, the Debtor withholds approximately $80,000.00 for federal withholdings and $8,000 for state per monthly pay period for Payroll Taxes, including both Employee and employer portions. As of the Petition Date, the Debtor estimates that accrued but unpaid Payroll Taxes equal approximately $113,821.41, including for July pay period and from August 1 through the date of the Petition.  Accordingly, by this Motion, the Debtor seeks authority to continue to honor and process all prepetition Payroll Tax obligations.

## **BASIS FOR RELIEF**

### A. **Authority and Cause Exist for the Court to Authorize the Payment of Prepetition Claims in Circumstances Such as These.**

Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1982). In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in Bankruptcy Code sections 1107 (giving the debtor in possession the rights of trustee), 1008 (permitting continued operation of the debtor's business), 363(b) (permitting use of property of the estate in the ordinary course of the debtor's business), and 105(a) (vesting authority in the Bankruptcy Court to issues orders necessary or appropriate to carry out the provisions of the Code).

Additionally, Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See e.g. In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed for payment of prepetition wages).  The Debtor's proposed

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 9

payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the

Bankruptcy Code and the "doctrine of necessity."  This section empowers the Court to issue an

order, process, or judgment that is necessary or appropriate to carry out the provisions of the

Bankruptcy Code. 11 U.S.C. § 105(a).  Under § 105, the court can permit pre-plan payment of

pre-petition obligation when essential to the continued operation of the debtor. *In re NVR L.P.*,

147 B.R. 126, 127 (Bankr.E.D. Va. 1992).

> As outlined recently by the United States Bankruptcy Court for the District of Colorado,
>
> The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. It follows that implicit in the duties of a Chapter 11 debtor-in-possession, as provided in Sections 1106, 1107 and 1108 of the Bankruptcy Code is the duty of such fiduciary to protect and preserve the estate, including an operating business's going-concern value. There can be little doubt that employees are the lifeblood of any operating business. Thus, actions to stabilize a debtor's relationships with its employees are critical to one of the principal goals of the Chapter 11 process: to preserve going-concern value. In many cases, preservation of going-concern value and ensuring the possibility of reorganization requires the timely payment of employee wages and benefits, including prepetition claims.

*In re Escalera Res. Co.*, 2015 Bankr. LEXIS 4003, *9-10 (Bankr. D. Colo., 2015) (internal

citations omitted).

The majority of the Debtor's Employees rely exclusively on their compensation, benefits,

and reimbursement of expenses to satisfy their daily living expenses and support their families.

Consequently, these Employees will be exposed to significant hardship if the Debtor is not

permitted to honor its obligations for Employee Compensation.  Moreover, if the Debtor is

unable to satisfy such obligations, Employee morale and loyalty will be jeopardized at a time

when Employee support of the company is critical.  These issues were recognized by the

Bankruptcy Court for the Northern District of Texas:

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 10
Matter: 12741-001

Absent competent personnel, it is doubtful that any debtor would be able to operate its business as contemplated by Code § 1108. Thus … actions to stabilize a debtor's relationship with its employees are critical to one of the principal goals of chapter 11 process: to preserve going-concern value.

While it is true that a debtor may be able to find replacement employees, as a practical matter no debtor can afford to lose very many of its employees, especially in a chapter 11 case's early days. In the first place, hiring a new work force immediately after the filing of a chapter 11 petition will often be difficult, and the debtor can expect the need for incentives, perhaps more costly than payment of prepetition wage and benefit claims, to attract new employees.

Second, continuity of conduct of business is important in a newly filed chapter 11 case. Significant turnover of employees will not only likely lead to operational problems that negatively affect the debtor's business; also in some areas - notably the accounting and inhouse legal functions - employee turnover can inhibit a debtor's ability to perform its chapter 11 duties.  Employees familiar with the debtor's operations and history will be essential to filing of schedules, anticipating operating requirements, budgeting and many other functions necessary to survival in chapter 11.

Third, even if employees remain with a debtor notwithstanding non-payment of prepetition wages and benefits, it is probable that their work would be affected by their loss of income. At a minimum, an employee who has not been paid his current wages is likely to be more concerned with personal economic issues than with the debtor's survival. At worst, unpaid compensation may affect motivation, making an employee sluggish, inattentive or even obstructive in the performance of work so adversely affect the chances of a successful reorganization.

*In re Tusa-Expo Holdings, Inc., et al.,* 2008 Bankr. LEXIS 2852, *7-9 (Bankr. N.D. Tex., 2008).

The Employees are critical to the continued operation of the Debtor.  They perform a variety of jobs including securing and providing patient care, cleaning and servicing facilities, providing food and laundry services, and otherwise administering the facilities.  Even a short period of inadequate staffing places patient care at risk.  For all of these reasons, a sound business purpose exists to pay the Employee Obligations.  In the absence of such payments, the Debtor believes that its Employees make seek alternative employment opportunities, thereby jeopardizing patient care and the Debtor's ability to continue operating.

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 11
Matter: 12741-001

**B.  A Significant Portion of the Employee Obligations are Entitled to Priority Treatment.**

All of the Employee Compensation is entitled to priority treatment under 28 U.S.C. § 507(a)(4)(A) (giving priority to wages, salaries or commissions, including vacation…sick leave pay earned within 180 days prepetition).  As outlined above, the Debtor believes only two providers are entitled to Employee Compensation exceeding the priority cap of $12,850, and the Debtor is not requesting payment above the statutory cap to those providers.  To confirm a Chapter 11 plan, the Debtor must pay priority claims in full.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries or commissions including vacation, severance and sick leave pay earned by an individual).

Thus, granting the relief sought by this Motion only affects the timing of payments to Employees and does not negatively impact recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee claims at this time enhances value for the benefit of the Debtor and all interested parties.  Further, payment of certain of the Employee Obligations, specifically the Payroll Taxes and Withholdings is required by law.  These amounts principally represent the Employee's earnings that governments, the Employees and judicial authorities have designated for deduction from the Employees' paychecks.  Certain Deductions, including child support and alimony payments are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §541; *see also Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that debtors "do not own an equitable interest in property… [they] hold in trust for another" and that therefore funds held in trust are not property of the estate).  Because the Withheld Amounts and the Deductions are not property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit these amounts to the appropriate parties in the ordinary course of business.

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 12
Matter: 12741-001

## JURISDICTION AND VENUE

On August 10, 2018 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to §§ 1107(a) and 1108.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(B) ARE SATISFIED

Under Bankruptcy Rule 6003, the Court may grant the relief requested in this Motion because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc*., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990).  Courts have held that irreparable harm exists where distractions to employees would burden the reorganization.  *See Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (S.D.N.Y. 2007).

## REQUEST FOR WAIVER OF STAY

To implement the forgoing immediately, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## DEBTOR'S RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its right to contest any

claim, applicability of any law, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its rights to contest any invoice or claim with respect to any obligation described herein in accordance with applicable bankruptcy and non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

## **RELIEF REQUESTED**

By this Motion, the Debtor seeks entry of an Order authorizing it to pay prepetition claims, honor obligations and/or continue certain employee-related programs, in the ordinary course of business, including with respect to:

a. Employee Compensation, including Unpaid Wages, Employee Draws, Independent Contractors, Reimbursable Expenses, Paid Time Off; and

b. Worker's-Compensation

c. Deductions and Payroll Taxes (each, as defined herein)

d. To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize all applicable banks, financial institutions to receive, process, honor and pay all checks presented for payment and all electronic payment requests made by the Debtor related to the Employee Obligations, whether such checks were presented or electronic payment requests were submitted prior to or after the petition date.

e. To the extent any of the Debtor's Employees assert claims under the Worker's Compensation Program, the Debtor further request that the Court modify the automatic stay under § 362 of the Bankruptcy Code to permit such Employees to proceed with their

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 14
Matter: 12741-001

claims under the Workers' Compensation Program.  This modification of the automatic

stay pertains solely to claims under the Workers' Compensation Program.

f.  With respect to all employees other than Scott Burpee (the President/shareholder/director

of the Debtor, who is also paid a salary), the Debtor requests the pre-petition amounts

described above be allowed on an emergency basis in order to encourage employee

morale and deter employees from leaving employment by the Debtor, all in order to

maintain required levels of patient care and service.

DATED this 10th day of August, 2018.

_____
      /s/  Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for Debtor in Possession

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2018, a true and correct copy of the foregoing Motion was filed electronically and upon such filing the CM/ECF registered participants were served by electronic means as more fully reflected on the Notice of Electronic Filing.  I further certify that on said date the twenty largest unsecured creditors (described further on the attached list) and any additional parties listed below, were served by depositing copies thereof in the United States Mail with first-class postage prepaid, enclosed in envelopes addressed to said creditors at their respective addresses.

Matthew T. Christensen                   mtc@angstman.com
U.S. Trustee                             ustp.region18.bs.ecf@usdoj.gov

Any others as listed on the Court's ECF Notice.

_____/s/  Matt Christensen_____
Matthew T. Christensen

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 16

AARCO A-1 HEALTH CARE SERVICE
PO BOX 75111
SEATTLE, WA 9812

AAMCO MEDICAL, LLC
9847 S 500 W STE 200
SANDY, UT 84070-2576

BLAINE COUNTY
219 FIRST AVENUE SOUTH
SUITE 102
HAILEY, ID 83333

COLONIAL FUNDING NETWORK
120 WEST 45TH
NEW YORK, NY 10036

EVOLUTION CAPITAL
120 W 45TH ST 2ND FLOOR
NEW YORK, NY  10036

HANSEN HUNTER AND CO.
8930 SW GEMINI DRIVE
BEAVERTON, OR 97008

HOLLLAND AND HART
800 W MAIN STREET #1750
BOISE, ID 83702

IDAHO DEPT OF HEALTH AND WELFARE
REVENUE UNIT
PO BOX 83720
BOISE, ID 83720-0036

INDEPENDENCE REHAB
5314 RIVER RUN DR, STE. 140
PROVO, UT 84604

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19107-3460

MCKESSON MEDICAL-SURGICAL
8121 10TH AVENUE N
MINNEAPOLIS, MN 55427

MEDSOURCE INCORPORATED
10520 SOUTH 700 EAST
SUITE 210
SANDY, UT 84070

NORIDIAN HEALTHCARE SOLUTION
PO BOX 6722
FARGO, ND 58108-6722

OMEGA HEALTHCARE INVESTORS
200 INTERNATIONAL CIRCLE
SUITE 300
HUNT VALLEY, MD 21030-1331

OMEGA MENTAL HEALTH
5985 W STATE STREET
BOISE, IDAHO 83703

PARKER PUBLIC AFFAIRS
599 W BANNOCK STREET
BOISE, IDAHO 83702

SAGE HEALTH CARE PLLC
413 N ALLUMBAUGH ST, STE. 101
BOISE, ID 83704

STATE OF IDAHO MEDICAID
PO BOX 83720
BOISE, ID 83720-0009

STRATEGIES 360 INC
1505 WESTLAKE AVENUE NORTH
SUITE 1000
SEATTLE, WA 98109

ALLIANCE LAUNDRY SYSTEMS
PO BOX 990
RIPON, WI 54971

BANK OF IDAHO
151 NORTH RIDGE, SUITE 240
IDAHO FALLS, ID 83402

BUSINESS MERCHANT FUNDING
680 CENTRAL AVE
BALTIMORE, MD 21201

CASH CAPITAL GROUP, LLC
1013 CENTRE RD, 403S
WILMINGTON, DE 19805

CCF LEASING CO
198 LOCUST ST S
TWIN FALLS, ID 83301

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DR
SPRINGFIELD, IL 62703

EASTERN IDAHO DEVELOPMENT
1651 ALVIN RICKEN DRIVE
POCATELL, ID 83201

EMPIRE FUNDING
1022 AVENUE M
BROOKLYN, NY 11230

FUNDROCK, LLC
1080 MCDONALD AVE
BROOKLYN, NY 11218

IDAHO ASSOCIATES, LLC
303 W MADISON STREET
SUITE 2400
CHICAGO, IL 60606

KUBOTA CREDIT CORPORATION
4400 AMON CARTER BLVD, STE 100
FORT WORTH, TX 76155

PLUSLUX, LLC
461 DOUGHTY BLVD
INWOOD, NY 11096

POCATELLO IDAHO PROPERTY, LLC
303 WEST MADISON STREET
SUITE 2400
CHICAGO, IL 60606

REBECCA TAYLOR
6110 INDIAN TREE LANE
POCATELL, ID 83204

US SMALL BUSINESS ADMINISTRATION
1651 ALVIN RICKEN DRIVE
POCATELLO, ID 83201

YELLOWSTONE CAPITAL
30 BROAD STREET 14TH FLOOR
SUITE 1462
NEW YORK, NY 10004

ZIONS FIRST NATIONAL BANK
253 SOUTH MAIN STREET
POCATELLO, ID 83204

ZIONS BANK
1235 S UTAH AVE
IDAHO FALLS, ID 83402

## EXHIBIT A

## Chart of Employees

| FName | LName | Job Title | Amount Owed for July 2018[1] | Status | Facility Name |
|---|---|---|---|---|---|
| LAREY | ADAMS | Nursing CNA | $1,306.50 | Full Time | Bell Mountain Village and Care Center |
| RUTH | ADAMSON | Social Services Payroll | $977.44 | PRN | Bell Mountain Village and Care Center |
| LAURIE | ADAMSON | Barber & Beauty Payroll | $393.36 | Part Time | Bell Mountain Village and Care Center |
| MARIA | ALCARAZ | Nursing CNA | $2,790.65 | Full Time | Bell Mountain Village and Care Center |
| NANCY | ALVARADO | Nursing NA | $1,493.05 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| MARIELA | ARTEAGA | Nursing CNA | $361.21 | PRN | Bell Mountain Village and Care Center |
| MONICA | AVERETT | Nursing RN | $3747.95 | Full Time | Safe Haven Hospital of Treasure Valley |
| ADRIAN | AVILA | Nursing RN | $3,756.07 | Full Time | Safe Haven Hospital of Treasure Valley |
| SELINA | AYALA | Nursing NA | $1,249.55 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| STEVE | AYERS | Nursing CNA | $3,826.57 | Full Time | Bell Mountain Village and Care Center |
| EAN | BARRY | Nursing Psych Tech | $1,155.76 | Full Time | Safe Haven Hospital of Treasure Valley |
| EVERETT | BAXTER | Nursing RN | $581.13 | PRN | Bell Mountain Village and Care Center |
| LAURA | BENAVIDEZ | Nursing CNA | $1,289.73 | Full Time | Bell Mountain Village and Care Center |

---

[1] This Motion also requests the Debtor be allowed to pay prepetition amounts accrued in August 2018. Those amounts are described in the concurrently-filed Motion for Use of Cash Collateral.

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 17

Matter: 12741-001

| KATELYN | BETTINGER | Social Services Payroll | $935.87 | Part Time | Safe Haven Hospital of Treasure Valley |
| EMILEE | BOATMAN | Nursing NA | $1,697.04 | Full Time | Bell Mountain Village |
| SARAH | BODILY | Recreation Therapy Payroll | $1,284.63 | Full Time | Safe Haven Hospital of Treasure Valley |
| LATISHA | BOWMAN | Social Services Payroll | $2,637.90 | Part Time | Safe Haven Hospital of Treasure Valley |
| TRINIDAD | BRIDGE | Nursing QAPI | $2,306.75 | Part Time | Safe Haven Hospital of Treasure Valley |
| TIA | CAMERON | Payroll | $,1707.24 | Part Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc) |
| ESTELA | CAMPOS | Dietary, Payroll | $264.90 | PRN | Bell Mountain Village and Care Center |
| ALMA | CARRILLO | Dietary, Payroll | $,1901.10 | Full Time | Bell Mountain Village and Care Center |
| KAYLE | CHILD | Nursing RN | $3,859.60 | PRN | Bell Mountain Village and Care Center |
| ASHLEY | CLAYTON | Nursing NA | $1,204.98 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| JANA | CLEAVER | Nursing LPN | $896.85 | Part Time | Bell Mountain Village and Care Center |
| SHYAN | COLLINS | Nursing NA | $1,387.61 | Full Time | Bell Mountain Village |
| CHRISTOPHER | CONNELL | Nursing RN | $5,102.70 | Full Time | Bell Mountain Village and Care Center |
| BENJAMIN | COOK | Pharmacy Payroll | $3,205.78 | Full Time | Safe Haven Hospital of Treasure Valley |
| DIONICIA | CORDOVA | Nursing CNA | $2,292.51 | Full Time | Bell Mountain Village and Care Center |
| MARCO | CORTEZ | Dietary, Payroll | $360.40 | Full Time | Bell Mountain Village and Care Center |
| RUTH | CRISSMAN | Nursing Ward Clerk Payroll | $1,527.90 | Full Time | Safe Haven Hospital of Treasure Valley |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 18
Matter: 12741-001

| CORTNEY | DAYTON | Administration & Dept Sal & Wages | $2,223.79 | Full Time | Safe Haven Hospital of Treasure Valley |
|---------|--------|-----------------------------------|-----------|-----------|----------------------------------------|
| KATELYN | DENISON | Nursing LPN | $1,944.11 | Part Time | Bell Mountain Village and Care Center |
| LIZA | DOYOG | Nursing NA | $1,280.78 | Full Time | Safe Haven Homes of Bellevue |
| CRAIG | EASTOP | Dietary, Payroll | $1,690.82 | Full Time | Bell Mountain Village and Care Center |
| DAVID | FENTON | Recreation Therapy Payroll | $1,523.09 | Full Time | Safe Haven Hospital of Treasure Valley |
| MICHELLE | FISK | Nursing CNA | $2,601.17 | Full Time | Bell Mountain Village and Care Center |
| AMYSUE | FLEENOR | Nursing LPN BM | $1,886.98 | Full Time | Bell Mountain Village and Care Center |
| JANN | FOLK | Nursing LPN | $30.30 | PRN | Bell Mountain Village and Care Center |
| LUIS | FONSECA | Nursing Psych Tech | $1568.00 | Full Time | Safe Haven Hospital of Treasure Valley |
| GLOREEN | FREDERICKS | Nursing CNA BM | $2,992.65 | Full Time | Bell Mountain Village and Care Center |
| MELISSA | GAGE | Nursing CNA BM | $1,244.86 | Full Time | Bell Mountain Village and Care Center |
| JENNIFER | GARCIA | Nursing CNA | $404.62 | PRN | Bell Mountain Village and Care Center |
| MIRIAM | GARCIA | Housekeeping Payroll | $2,021.27 | Full Time | Bell Mountain Village and Care Center |
| GRACIELA | GARCIA | Housekeeping Payroll | $1,269.63 | Full Time | Bell Mountain Village and Care Center |
| VELIA | GAUMER | Nursing NA | $496.27 | Part Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| GRETCHEN | GAYLE | Nursing RN | $60.21 | Full Time | Safe Haven Hospital of Treasure Valley |
| TERRISA | GILBERT | Nursing Ward Clerk Payroll | $1,657.69 | Full Time | Safe Haven Hospital of Treasure Valley |
| JUANA | GOMEZ | Dietary, Payroll | $782.89 | Full Time | Safe Haven Homes of Wendell-Magic Valley |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 19

Matter: 12741-001

| | | | | | Manor |
|---|---|---|---|---|---|
| JULIETA | GOMEZ | Nursing NA | $1,081.37 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ELIZABETH | GONZALEZ | Nursing CNA | $1,586.38 | Full Time | Bell Mountain Village and Care Center |
| GLORIA | GONZALEZ JUAREZ | Nursing NA | $838.74 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| GARY | GROSE | Dietary, Payroll | $1,370.82 | Full Time | Bell Mountain Village and Care Center |
| HERENDI | GUADARRAMA | Nursing NA | $927.11 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ANGELA | HARMON | Nursing Psych Tech | $1,867.74 | Full Time | Safe Haven Hospital of Treasure Valley |
| HANNAH | HARRIS KOLLIE | Nursing Psych Tech | $1,308.67 | Part Time | Safe Haven Hospital of Treasure Valley |
| ALMA | HINTZ GUZMAN | Nursing NA | $2,463.84 | Full Time | Safe Haven Homes of Bellevue |
| MICHAEL | HOEFER | Nursing Psych Tech | $709.21 | PRN | Safe Haven Hospital of Treasure Valley |
| STACEY | HOMER | Nursing Psych Tech | $2,367.30 | Full Time | Safe Haven Hospital of Treasure Valley |
| JANET | HUDELSON | Nursing CNA BM | $2,161.94 | Full Time | Bell Mountain Village and Care Center |
| KIMBERLY | HUNT | Nursing CNA | $1,973.45 | Full Time | Bell Mountain Village and Care Center |
| BRANDON | IVEY | Nursing NA | $953.41 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| LETICIA | JIMENEZ | Nursing NA | $813.61 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ANDREA | JIMENEZ | Nursing CNA | $1,329.76 | Full Time | Bell Mountain Village and Care Center |
| MARIA | JUAREZ | Nursing CNA | $1,146.88 | Part | Bell Mountain Village and |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES, SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 20

Matter: 12741-001

| | | | | | |
|---|---|---|---|---|---|
| | | | | Time | Care Center |
| KYLA | KINAS | Nursing NA | $1,225.31 | Full Time | Safe Haven Homes of Bellevue |
| KARA | KINAS | Nursing NA | $3,614.09 | Full Time | Bell Mountain Village |
| LAURIE | KOUTSKY | Activities Payroll | $1,908.74 | Part Time | Bell Mountain Village and Care Center |
| TERESA | LAZARO | Nursing CNA | $1,820.36 | Full Time | Bell Mountain Village and Care Center |
| NANCY | LUEVANOS | Nursing CNA | $1,956.98 | PRN | Bell Mountain Village and Care Center |
| AMY | MARCUM | Nursing NA | $2,683.22 | Full Time | Safe Haven Homes of Bellevue |
| JASMINE | MARQUEZ | Nursing NA | $953.28 | Full Time | Bell Mountain Village |
| DEBORAH | MASSIE | Nursing RN | $5,928.18 | Full Time | Bell Mountain Village and Care Center |
| ALBERTO | MATIAS RAYMANDO | Nursing NA | $1,471.50 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| MICHAELA | MAUL | Activities Payroll | $1,047.89 | Full Time | Bell Mountain Village and Care Center |
| SARA | MAYS | Nursing NA | $196.94 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ANDREA | MCCORD | Nursing Psych Tech | $1,084.52 | Full Time | Safe Haven Hospital of Treasure Valley |
| KELLEY | MCCUSKER | Dietary, Payroll | $167.77 | PRN | Safe Haven Hospital of Treasure Valley |
| MARIA | MENDOZA CORDOVA | Nursing CNA | $391.15 | PRN | Bell Mountain Village and Care Center |
| ANA | MIRELES GAMINO | Nursing Psych Tech | $1,046.18 | Part Time | Safe Haven Hospital of Treasure Valley |
| RODRIGO | MOLINA | Nursing LPN | $4,162.93 | Full Time | Bell Mountain Village and Care Center |
| JOE | MORAN | Plant Ops, Payroll | $2,256.12 | Full Time | Bell Mountain Village and Care Center |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 21

| | | | | | |
|---|---|---|---|---|---|
| SHELLY | MOTZNER | Nursing NA | $1,777.59 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| MISTI | NEWSON | Nursing RN | $3,176.62 | Part Time | Safe Haven Hospital of Treasure Valley |
| WESLEY | NITCHALS | Dietary, Payroll | $3,037.75 | Full Time | Safe Haven Hospital of Treasure Valley |
| MARIA | PALOMERA | Nursing NA | $370.22 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ANITA | PARKER | Housekeeping Payroll | $1,234.48 | Full Time | Safe Haven Hospital of Treasure Valley |
| NOELIA | PASILLAS | Nursing NA | $952.51 | Full Time | Bell Mountain Village and Care Center |
| FRANCISCA | PEREZ | Housekeeping Payroll | $1,533.34 | Full Time | Bell Mountain Village and Care Center |
| ARACELI | PEREZ | Dietary, Payroll | $505.10 | PRN | Safe Haven Homes of Wendell-Magic Valley Manor |
| SEAN | PERKINS | Dietary, Payroll | $1,203.21 | Full Time | Safe Haven Hospital of Treasure Valley |
| BILL | PETERSON | Plant Ops, Payroll | $733.57 | Full Time | Safe Haven Hospital of Treasure Valley |
| SANDRA | PHILLIPS | Social Services Payroll | $2,823.74 | Full Time | Safe Haven Hospital of Treasure Valley |
| ANDREA | PIKES | Nursing Psych Tech | $849.67 | Full Time | Safe Haven Hospital of Treasure Valley |
| ALYSSA | POWELL | Pharmacy Payroll | $770.10 | PRN | Safe Haven Hospital of Treasure Valley |
| CHRISTINE | PRICE | Nursing Psych Tech | $1,363.47 | Full Time | Safe Haven Hospital of Treasure Valley |
| ERIKA | RENTERIA | Medical Records Payroll | $2,324.61 | Full Time | Safe Haven Hospital of Treasure Valley |
| CARMEN | RICE | Nursing LPN | $3,013.41 | Full Time | Bell Mountain Village and Care Center |
| JONAH | RONO | Nursing LPN | $2,651.53 | Full Time | Safe Haven Hospital of Treasure Valley |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 22
Matter: 12741-001

| | | | | | |
|---|---|---|---|---|---|
| RICK | ROUTT | Nursing RN | $5,593.28 | Full Time | Bell Mountain Village and Care Center |
| TYLER | ROWBURY | Nursing Psych Tech | $738.91 | PRN | Safe Haven Hospital of Treasure Valley |
| ENALYN | ROYECA | Nursing RN | $2,701.46 | Full Time | Bell Mountain Village and Care Center |
| CONNIE | RUNYAN | Nursing CNA BM | 924.32 | PRN | Bell Mountain Village and Care Center |
| SHAWN | SAMSON | Nursing Psych Tech | $290.46 | PRN | Safe Haven Hospital of Treasure Valley |
| JAMIE | SANDOVAL | Nursing NA | $24.66 | Part Time | Safe Haven Homes of Wendell-Magic Valley Manor |
| ASHLEY | SANTOS | Nursing CNA | $971.46 | PRN | Safe Haven Homes of Wendell-Magic Valley Manor |
| MARYLEN | SIERRA | Nursing NA | $1028.58 | Part Time | Safe Haven Homes of Bellevue |
| ROBYN | SISSON | Nursing CNA | $1,518.66 | Full Time | Bell Mountain Village and Care Center |
| JUNKO | SMITH | Nursing RN | $4,866.29 | PRN | Bell Mountain Village and Care Center |
| MIA | STENNES | Nursing QAPI | $4,658.29 | Full Time | Safe Haven Hospital of Treasure Valley |
| PATRICIA | STIMSON | Nursing Psych Tech | $1,944.32 | Full Time | Safe Haven Hospital of Treasure Valley |
| MISTY | STRAIT | Nursing CNA | $3,853.84 | Full Time | Bell Mountain Village and Care Center |
| AMERICA | TELLEZ | Nursing NA | $1,736.29 | Full Time | Bell Mountain Village and Care Center |
| KARALEE | THOMPSON | Nursing RN | $3,058.97 | Full Time | Safe Haven Hospital of Treasure Valley |
| MAYRA | TREJO | Nursing CNA | $687.10 | PRN | Bell Mountain Village and Care Center |
| FAVIOLA | VALDEZ | Nursing CNA | $1,719.49 | Full Time | Bell Mountain Village and Care Center |
| SOLEDAD | VARGAS | Nursing CNA | $46.95 | PRN | Bell Mountain Village and |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 23

|  |  |  |  |  | Care Center |
|---|---|---|---|---|---|
| JOSEFINA | VEGA | Dietary, Payroll | $212.72 | Part Time | Bell Mountain Village and Care Center |
| ROVELYN | VENNER | Nursing NA | $934.16 | Full Time | Bell Mountain Village |
| WILLIAM | VERA | Plant Ops, Payroll | $190.00 | PRN | Safe Haven Hospital |
| REVECA | VILLAGOMEZ | Nursing CNA BM | $2,005.32 | Part Time | Bell Mountain Village and Care Center |
| STEPHEN | VORHIES | Nursing Psych Tech | $1,001.20 | Full Time | Safe Haven Hospital of Treasure Valley |
| JOSEPH | VOSS | Nursing Psych Tech | $1,141.81 | Part Time | Safe Haven Hospital of Treasure Valley |
| STEPHANIE | WALTERS | Nursing RN | $3,541.46 | Full Time | Safe Haven Hospital of Treasure Valley |
| BENJAMIN | WALTON | Nursing Psych Tech | $953.75 | PRN | Safe Haven Hospital of Treasure Valley |
| STEVE | WILSTEAD | Nursing RN | $61.63 | Full Time | Safe Haven Hospital of Treasure Valley |
| JOHN | WINGATE | Nursing RN | $3,839.31 | Full Time | Safe Haven Hospital of Treasure Valley |
| SHELLIE | WOODWORTH | Administration & Dept Sal & Wages | $104.09 | PRN | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc). |
| BRITTANY | YAGLA | Nursing CNA | $1,193.46 | Full Time | Bell Mountain Village and Care Center |
| CYNTHIA | BROOME | Dietary, Payroll | $2,392.09 | Full Time | Bell Mountain Village and Care Center |
| ALLAN | BURPEE | CFO | $4,707.06 | Full Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc). |
| SCOTT | BURPEE | CEO | $12,750.90 | Full Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc) |
| CYNTHIA | HAAS | Nursing Admin | $3,826.15 | Full | Safe Haven Hospital of |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 24

Matter: 12741-001

|  |  | DNS Payroll |  | Time | Treasure Valley |
|---|---|---|---|---|---|
| JESSICA | HARRIS | Assistant Administrator | $4,363.50 | Full Time | Bell Mountain Village and Care Center |
| URSULA | HULBERT | Medical Records Payroll | $3,358.09 | Full Time | Bell Mountain Village and Care Center |
| CHARLES | LLOYD JR | COO | $8,896.16 | Full Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc) |
| DEBRA | MONTELONGO | HR Manager | $2,738.44 | Full Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc) |
| GENEVIVE | OLIVAS | Social Services Payroll | $2,006.08 | Full Time | Bell Mountain Village and Care Center |
| ANGELA | PASQUALE | Controller | $5,403.54 | Full Time | Safe Haven Health Care Inc. (previously CareFix Management and Consulting Inc). |
| DARWIN | ROYECA | Administrator | $8,946.61 | Full Time | Bell Mountain Village and Care Center |
| WENDY | RUSSELL | Administrator Payroll | $4,000.00 | Full Time | Safe Haven Hospital of Treasure Valley |
| ANITA | WOODBRIDGE | Administrator | $3,486.80 | Full Time | Safe Haven Homes of Wendell-Magic Valley Manor |

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 25

Matter: 12741-001

## EXHIBIT B

### Chart of Independent Contractors

| Entity Name | Service Description | Amt. Owed | Facility Location |
|---|---|---|---|
| Omega Mental Health | Psychiatric Doctors | $12,850.00[2] | Boise, Idaho |
| Sage Health Care PLLC | Medical Doctors | $12,850.00[3] | Boise, Idaho |
| Ratus PLLC | Psychiatric Doctors | $7,625.00 | Boise, Idaho |
| Dr. Keith Davis | Doctor | $9,000.00 | Bellevue, Idaho |
| Hepworth Transcription | Transcriptionist | $2,870.57 | Boise, Idaho |
| Colby Vance, PA-C | Physicians Assistant | $800.00 | Wendell |
| Donna Alfs | Therapist. | $731.25 | Bellevue, Idaho |

---

[2] Maximum allowed unsecured claim amount under 507(a)(4), prepetition debts for this creditor totals $41,307.46.
[3] Maximum allowed unsecured claim amount under 507(a)(4), prepetition debts for this creditor totals $30,660.00..

MOTION FOR EMERGENCY AND FINAL ORDERS RE: PREPETITION WAGES,
SALARIES, EMPLOYEE LEAVE, AND WITHHOLDINGS – PAGE 26
Matter: 12741-001